IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Barry W. Mills,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:13cv520 |
| Dennis L. Holmes, *et al.*,<br>    Defendants. | )<br>)<br>) | |

## MEMORANDUM OPINION

Barry W. Mills, a Virginia inmate proceeding *pro se*, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants (i) Dennis L. Holmes, Unit Manager at Deep Meadow Correctional Center ("Deep Meadow"), (ii) Major George E. Pierotti, Chief of Security at Deep Meadow, (iii) Harris Diggs, Jr., Warden of Deep Meadow, and (iv) L. Mercado, Counselor at Deep Meadow, violated plaintiff's Fourteenth Amendment Due Process rights by failing to give him notice and a proper hearing before reducing his Good Conduct Allowance ("GCA") Class Level from I to III. This reduction in Class Level means that plaintiff now earns GCA at one third the rate he previously enjoyed. Each defendant is sued in his official and individual capacities. On August 28, 2013, defendants filed a motion for summary judgment, to which plaintiff filed a response. (Dkt. 20, 27). The defendants' motion was denied on the ground that there existed a material dispute of fact as to whether plaintiff had exhausted his administrative remedies. *Mills v. Holmes*, 1:13cv520 (E.D. Va. Feb. 20, 2014) (Memorandum Opinion and Order) (Dkt. 31). Thereafter, on March 20, 2014, defendants filed a renewed motion for summary judgment, to which plaintiff also filed a response. (Dkt. 33, 36).

Plaintiff's § 1983 claim and defendants' motion for summary judgment raise the following questions:

(i) Whether plaintiff's claim is cognizable under § 1983 or whether it must be brought as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254;

(ii) Whether plaintiff's claim can be construed and resolved as a § 2254 habeas petition or whether it must be dismissed for procedural infirmities; and

(iii) Whether plaintiff has a liberty interest in his GCA Class Level that allows him to state a claim for having been deprived of that interest without the procedural due process guaranteed by the Fourteenth Amendment.

Consideration of these questions as well as review of the renewed motion for summary judgment and supporting memorandum reveals that defendants' motion must be granted.

**I.**

Plaintiff alleges that defendants violated his Fourteenth Amendment Due Process rights by reducing his GCA earning level from Class Level I to Class Level III without giving him notice or a hearing as required by Virginia Department of Corrections Operating Procedure ("VDOC Op. Proc.") 830.1. The pertinent facts, insofar as they are reflected in the current record, may be succinctly stated.

On December 7, 2012, plaintiff arrived at Deep Meadow from Dillwyn Correctional Center ("Dillwyn"), where he had been in the segregation unit. *See* Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Aff.") (Dkt. 27-1) ¶ 2. At that time, plaintiff was in GCA Class Level I. *See* Compl. at 4. Inmates in Class Level I earn 30 days of GCA for every thirty days served. VDOC Op. Proc. 830.3(VII)(C). Inmates in Class Level III earn just ten days of GCA for every thirty days served. *Id.* An inmate's GCA Class Level affects his sentence duration because earned GCA credits apply against an inmate's mandatory and discretionary parole dates. *Id.*

As noted, before being transferred to Deep Meadow, plaintiff was in GCA Class Level I. Plaintiff contends that defendant Holmes reduced this to Class Level III when plaintiff arrived at Deep Meadow on December 7, 2012 without providing plaintiff the "Formal Due Process Hearing" required by VDOC Op. Proc. 830.1. *Id.* (stating that "[a] formal due process hearing is required when an offender ... faces the possibility of ... reduction in good time earning level outside the Annual Review Cycle"). Plaintiff allegedly did not learn that his GCA Earning Level had changed until January 1, 2013, when he realized that his discretionary and mandatory parole eligibility dates had changed from August 21, 2015 to May 31, 2016, and March 2, 2020 to October 24, 2023, respectively. *See* Pl.'s Aff. ¶ 7; Plaintiff's Memorandum in Opposition to Defendants' Renewed Motion for Summary Judgment ("Pl.'s Mem.") (Dkt. 36), at 8 ¶ 5.

Defendants contend that when plaintiff arrived at Deep Meadow, Major Pierotti instructed defendants Holmes and Mercado to review plaintiff's security level to determine whether plaintiff could be placed in the general population at Deep Meadow. *See* Memorandum in Support of Defendants' Renewed Motion for Summary Judgment ("Defs.' Mem.") (Dkt. 33), Ex. 1 (Holmes Aff.) ¶ 7. Pursuant to this instruction, and in accordance with VDOC Op. Proc. 830.2, Holmes and Mercado reviewed and adjusted plaintiff's security level. Defendants state that during the review of plaintiff's security level, they recommended that his GCA Class Level be reduced, but did not actually effectuate the change in GCA Class Level. Holmes Aff. ¶ 7. The current record is therefore unclear as to when the reduction in plaintiff's GCA Class Level actually occurred, but it is undisputed that a reduction in plaintiff's GCA Class Level *did* occur at some point after plaintiff's transfer to Deep Meadow. The current record is also unclear as to whether plaintiff waived the 48-hour notice of his Formal Due Process Hearing as authorized by

3

VDOC regulations, and unclear generally as to what process plaintiff was provided before the reduction in his GCA Class Level occurred.

## II.

A brief summary of VDOC's regulations relating to GCA and the process afforded to inmates is necessary to understand and resolve the questions presented.

VDOC Op. Proc. 830.1 and 830.3 provide detailed procedures that prison officials must follow when modifying GCA Class Level and other conditions of an inmate's confinement. Pursuant to this regulation, when officials modify or review an inmate's security level classification, GCA earning level, facility assignment, or other factors affecting the inmate, the officials must conduct an Institutional Classification Authority ("ICA") hearing. Importantly, there are two types of ICA hearings relevant to changes in GCA Class Levels. First, an inmate receives an annual classification review held on the yearly anniversary of his assignment to a particular security level.[1] An inmate has the right to be present and to participate in the annual classification review process, but an inmate on this occasion need not receive the full panoply of rights afforded at a Formal Due Process Hearing. *See* VDOC Op. Proc. 830.1(III); (IV)(B)(2)(a)(i) ("Due to the routine nature of annual reviews, due process is not required, but the offender should be allowed to be present and have input in the process.").[2] At an inmate's annual review, officials

---

[1] An inmate's security level is "a measure of the degree of physical restraint and supervision that is required to maintain adequate control over an offender to prevent escapes, minimize risk of staff and offender injury, and maintain orderly facility operations while providing for the safety of the general public." VDOC Op. Proc. 830.2(III) (Jan. 1, 2015). There are six security levels, ranging from Minimum to Segregation Step-Down, as well as six "Specialty Designations," such as Protective Custody, Death Row, and Segregation. *Id.* (IV)(A)(2).

[2] For instance, VDOC Operating Procedures do not specify whether and how an inmate is to receive notice of the annual review process. Other rights available at a Formal Due Process hearing that are unavailable at an inmate's annual review include the right to call and question witnesses, to

must evaluate and can modify all aspects of the inmate's confinement, including the inmate's GCA Class Level. *Id.* (IV)(B)(2)(a)(iv).

If prison officials wish to reduce an inmate's GCA Class Level outside of his annual review, the VDOC Operating Procedures state that a Formal Due Process Hearing is "required." *See id.* (III).[3] Before a Formal Due Process Hearing, prison officials must provide an "Institutional Classification Authority Hearing Notification" to the inmate at least 48 hours in advance of the hearing. *See* VDOC Op. Proc. 830.1(V)(A)(1)-(2). To confirm that this notice has been provided, the inmate must sign the notification form and the prison official serving the notification must provide the inmate with a copy of the form. *Id.* (V)(A)(6). If the inmate refuses to sign the hearing notification, the prison official serving the notice must note the inmate's refusal and sign the form as a witness to that event. *Id.* An inmate may waive this 48-hour notice, but in that event the inmate must sign a waiver of the notice. *Id.* (V)(A)(2). At a Formal Due Process Hearing, the inmate is entitled (i) to be present, (ii) to hear the testimony or statement of the reporting officers to any relevant incident, (iii) to remain silent, (iv) to call and question witnesses, (v) to have a counselor or employee present, (vi) to "be advised verbally and in writing within five working days of the ICA's recommendation and reason for the decision," (vii) to receive a copy of the final approving authority's decision, and (viii) to appeal the ICA's decision. *Id.* (V)(A)(3).

Whether at a Formal Due Process Hearing or an annual review, an inmate's GCA Class Level may only be reduced on the recommendation of the ICA and approval of the Facility Head. VDOC Op. Proc. 830.3 (V)(F)(12). The VDOC Operating Procedures state that a Class Level

---

have a counselor or other employee present to advise, and to hear the testimony or statement of the reporting officer.

[3] The regulations provide that a reduction of an inmate's Class Level "will occur only due to an offender's special status ... or by action of the ICA with approval of the Facility Head in accordance with Operating Procedure 830.1."

5

reduction should be based on a "significant decline in any area of performance and responsibility to the extent that the offender clearly has failed to maintain behaviors that led to advancement to the present class." *Id.* (V)(B)(4)(a). To determine an inmate's Class Level, the ICA evaluates him based on a point system. Inmates may earn up to 100 points in three categories: "Infractions"; "Reentry Plan, Annual Goals"; and "Work." VDOC Op. Proc. 830.3(V)(C). Inmates earning 85 to 100 points are within the range for Class Level I; inmates earning 45 to 64 points are within the range for Class Level III. This point score and attendant Class Level can be rejected by the classifying authority by applying one of seven "approved overrides" that "must be justified with override numbers and supporting comments." *Id.* (V)(F)(10). These overrides include:

> (1) the existence of a point score in one area of evaluation that is inordinately high or low;
>
> (2) the seriousness or number of institutional infractions warranting a different Class Level;
>
> (3) a significant recent decrease in an area of evaluation;
>
> (4) an extraordinary improvement in one or more areas of evaluation;
>
> (5) a lack of program availability that would allow an inmate to accrue more points;
>
> (6) the need for more information, for instance, to complete an investigation or to allow a longer period of adjustment; and
>
> (7) the inmate's refusal of or removal from any required educational, program, vocational, or work assignment.

VDOC Op. Proc. 830.1(V)(F)(10). An inmate's GCA Class Level is only changed when the Facility Unit Head approves the ICA action.

### III.

Neither recognized nor briefed by the parties is an important preliminary question of subject matter jurisdiction, namely whether plaintiff's claim is cognizable in a § 1983 action as plaintiff alleges, or whether the claim must be brought only through a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Under *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), an inmate may not bring a § 1983 action if the relief he seeks would amount to "a determination that he is entitled to . . . a speedier release from . . . imprisonment." Claims that "necessarily imply the invalidity of the punishment imposed" lie at the core of habeas corpus relief and thus can only be brought under § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). For the reasons that follow, plaintiff's claim challenges the duration of his confinement and therefore may not be brought under § 1983.

In his initial complaint, plaintiff prayed for monetary damages and sought an order reversing the ICA action. Compl. at 5. Although plaintiff appears to attack the mere deprivation of process before his GCA Class Level was reduced rather than the substance of the Class Level evaluation, it is clear that his requested relief would implicate the validity of the reduction in his GCA Earning Level and thus potentially the length of his prison sentence. An order reversing the ICA action would necessarily result in the restoration of plaintiff's GCA Level I status and the attendant good time credit accrual ratio and would therefore necessarily have the effect of shortening plaintiff's sentence.

Even to the extent that plaintiff challenges deficient procedures rather than a deficient substantive outcome, the Supreme Court has made clear that an inmate may not bring a § 1983 claim if the action would "necessarily imply the invalidity of the punishment imposed." *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Edwards v.*

*Balisok* clearly illustrates this principle. There, an inmate sought injunctive and monetary relief for allegedly constitutionally deficient prison disciplinary procedures, the application of which resulted in the deprivation of 30 days of the inmate's previously earned good-time credit. 520 U.S. at 644-45. On these facts, the Supreme Court held that such a claim was not cognizable under § 1983 inasmuch as "[t]he principal procedural defect complained of... would, if established, necessarily imply the invalidity of the deprivation of [the inmate's] good time credits." *Id.* at 646. Precisely this occurred here, as plaintiff claims that he received *none* of the process to which he was entitled in connection with the reduction of his GCA Class Level and that without that process, defendants were not authorized to reduce his Class Level. In other words, the principal procedural defect complained of—the total absence of process—would necessarily imply that the substantive result—reduction of his GCA Class Level—was invalid. It follows that here, as in *Edwards*, plaintiff's remedy is under § 2254.

Additional Supreme Court precedent confirms that plaintiff is barred from proceeding under § 1983 on his claim for money damages. Thus, the Supreme Court has made clear that an inmate's § 1983 action may not proceed, "no matter the relief sought... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original); *see also Heck v. Humphrey*, 512 U.S. at 481-82. In other words, even when plaintiff seeks money damages rather than equitable relief, if demonstrating plaintiff's entitlement to damages also demonstrates that the duration of his confinement is unlawful, a § 1983 suit is barred even though the requested relief would not *actually* change the duration of his confinement. Here, plaintiff's entitlement to damages for having been deprived of the Formal Due Process Hearing afforded by VDOC regulations depends on plaintiff's ability to show that he is constitutionally entitled to that process. If he was

8

constitutionally entitled to that process, then defendants' reduction of his GCA Class Level *without* the process to which he was entitled is necessarily unlawful. And because plaintiff's GCA Class Level affects the date of his mandatory parole and thus affects the duration of his sentence, success in his claim for monetary damages would necessarily demonstrate the invalidity of the duration of plaintiff's confinement. Accordingly, plaintiff's action is not cognizable under § 1983 and must instead be construed as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## IV.

Ordinarily, when an action brought as a § 1983 suit is addressable only as a § 2254 petition, a court must dismiss the complaint because § 2254, unlike § 1983, requires a petitioner to exhaust state remedies before proceeding in federal court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). Further, it may be inappropriate in some cases to convert a § 1983 action into a § 2254 claim because a § 2254 claim is appropriately brought against the party responsible for the petitioner's allegedly unlawful confinement—typically the warden of the facility in which petitioner is confined—and an action incorrectly brought under § 1983 may not be directed at the proper defendant. Yet, plaintiff's[4] claim here need not be dismissed, but may instead proceed as a § 2254 petition because (i) it is futile to require him to exhaust state remedies because Virginia does not allow state habeas actions for claims regarding an inmate's GCA and (ii) plaintiff has sued a proper § 2254 respondent, Harris Diggs, Jr., Deep Meadow's warden, and all improper parties may be dismissed.

---

[4] Even though plaintiff is technically a "petitioner" for purposes of a writ of habeas corpus, the denomination "plaintiff" will continue to be used for the sake of clarity.

9

Plaintiff's claim need not be dismissed for failure to exhaust because exhaustion of state remedies is not required if "there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(B)(i). The Supreme Court of Virginia has held that Virginia courts' habeas corpus jurisdiction does not extend to "disputes which only tangentially affect an inmate's confinement, such as prison classification issues concerning the rate at which a prisoner earns good conduct or sentence credits." *Carroll v. Johnson*, 278 Va. 683, 694, 685 S.E.2d 647, 652 (2009). In other words, Virginia state law provides no remedies for plaintiff to exhaust in this context, and therefore the need to exhaust remedies is no obstacle to construing and resolving plaintiff's complaint as a § 2254 petition.

Thus, after dismissing all defendants other than Warden Diggs, it is appropriate to construe plaintiff's complaint as a habeas petition because the typical procedural barriers to proceeding directly under § 2254 do not apply. Accordingly, plaintiff's claim that he was denied Fourteenth Amendment procedural due process when his GCA Class Level was reduced without notice or a hearing may now be considered on the merits as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

V.

The remaining question, therefore, is whether plaintiff's complaint states a valid claim for relief under § 2254. The Fourteenth Amendment prohibits a state from depriving an individual of "life, liberty, or property" without due process of law. U.S. Const. amend. XIV. If no "life, liberty, or property" interest within the meaning of the Constitution is in issue, then there can be no deprivation of constitutional due process. This is true even where, as plaintiff alleges here, the state prescribes but then fails to provide certain procedural prerequisites because there is no federal constitutional entitlement to a state *procedure*. The Fourteenth Amendment entitles one

only to whatever process the Constitution requires when a substantive *protected interest* is jeopardized. *See Olim v. Wakinekona*, 461 U.S. 238 (1983) ("Process is not an end it itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Morris v. City of Danville*, 744 F.2d 1041 (4th Cir. 1984) ("[T]he mere fact that a state agency violates its own procedures does not, *ipso facto*, mean that it has contravened federal due process requirements."); *Holmes v. Cooper*, 872 F. Supp. 298, 302 (W.D. Va. 1995) ("Procedural protections, standing alone, even if clearly mandated by state law, do not create a liberty interest in either the procedures themselves or the substantive result they purportedly protect." (citing *Stewart v. Bailey*, 7 F.3d 384, 392 (4th Cir. 1993))). Accordingly, plaintiff must show more than a deprivation of state-prescribed process; rather, he must show that he was deprived of a constitutionally protected interest.

Prisoner claims for deprivations of good time credit or good time credit earning ability are not uncommon and are generally analyzed as claims for deprivation of a liberty interest. A constitutionally protected liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted). Importantly, the Supreme Court has made clear in this respect that inmates have no liberty interest derived from the Constitution itself in receiving good-time credit or in a particular good-time credit earning level. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). But equally important is that liberty interests may nonetheless be created by state law or prison regulations and when so created, such rights are subject to the protection of the Due Process Clause "to insure that the state-created right is not arbitrarily abrogated." *Id.* Thus, for plaintiff to

succeed in his claim, he must show that Virginia statutes or regulations create a liberty interest in GCA Class Level.

To determine whether a liberty interest is created by state law, the Supreme Court's teaching in *Sandin v. Connor*, 515 U.S. 472 (1995), is that courts must engage in a two-step analysis. Specifically, to determine whether an inmate has alleged a deprivation of a liberty interest, courts must first examine the "'nature' of the interest with respect to interests allegedly created by the state." *Id.* at 480. Once it is clear that the alleged deprivation is in the nature of a liberty interest within the meaning of the Constitution, courts must then consider whether state law actually creates an entitlement to that interest through mandatory language and substantive limits on official discretion.[5] *Id.* at 484.

Thus, the first step in analyzing plaintiff's claim is to determine the nature of the interest that has been deprived. An alleged deprivation of an interest is in the nature of a *liberty* interest (1) if it constitutes a condition that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) if it "inevitably affect[s] the duration of [the inmate's] sentence." *Id.* at 484.[6] Although courts in this district have sometimes conflated these

---

[5] In reaching this result, the Supreme Court criticized the methodology of *Hewitt v. Helms*, 459 U.S. 460 (1983), which the *Sandin* court described as analyzing the existence of due process liberty interests solely by considering "whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." *Sandin*, 515 U.S. at 481. The Court in *Sandin* noted that by focusing the liberty interest inquiry on "the language of a particular regulation, and not the nature of the deprivation, [*Hewitt*] encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.*

[6] Although no Fourth Circuit authority yet explicitly differentiates conditions claims and duration claims as the *Sandin* analysis suggests, other circuits have made this explicit. *See, e.g., Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005); *McGuinness v. Dubois*, 75 F.3d 794, 798 n.3 (1st Cir. 1996); *Orellana v. Kyle*, 65 F.3d 29, 32-33 (5th Cir. 1995). These cases, along with an unpublished case in the Eastern District of Virginia, provide a helpful and complete analysis of the liberty

two distinct categories[7]—that is, an interest in avoiding a particular *condition* of confinement as opposed to an interest in the *duration* of one's confinement—*Sandin* makes this distinction clear.[8] *Sandin*'s "atypical and significant hardship" inquiry applies only to cases challenging *conditions* of confinement because claimants must show that the condition complained of is sufficiently onerous in order for that condition to rise to the nature of a liberty interest. No such test is necessary where the claim involves the *duration* of confinement because freedom from confinement is necessarily in the nature of a liberty interest. A review of VDOC Operating Procedures makes clear that an inmate's GCA Class Level does not affect his privileges, degree of physical restraint, or other aspects of the inmate's experience of his confinement; rather, GCA Class Level affects only the rate at which GCA is accrued and thereby the amount of time the inmate expects to remain confined. Thus, plaintiff's claimed interest in his GCA Class Level is one which affects the duration of his sentence and is thus in the nature of a liberty interest under the Fourteenth Amendment. *See Wilson v. Jones*, 430 at 1117; *McGuinness v. Dubois*, 75 F.3d at 798 n.3; *Orellana v. Kyle*, 65 at 32-33; *Puranda v. Johnson*, 2009 WL 3175629, at *3.

With that established, plaintiff must next show that state statutes or regulations grant

---

interest inquiry after *Sandin*. *See Puranda v. Johnson*, 2:08cv687, 2009 WL 3175629, at *3 (E.D. Va. Sept. 30, 2009) (noting that no case in the Fourth Circuit had yet "systematically summarize[d] each step of inquiry necessary to evaluate a state-created liberty interest").

[7] Courts have sometimes conflated GCA Class Level with other administrative classifications such "security or custody status" which pertain *only* to the inmate's experience while confined. *See, e.g., DeBlasio v. Johnson*, 128 F. Supp. 2d 315 (E.D. Va. 2000) (analyzing claim for GCA earning level based on whether "the regulation imposes upon the inmate *conditions* which dramatically depart from the expected conditions of his indeterminate sentence"); *Oliver v. Powell*, 250 F. Supp. 2d 593 (E.D. Va. 2002) (equating "custody and security status and good time earning rates").

[8] *See Sandin*, 515 U.S. at 487 (stating,"[n]or does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence" and thus contrasting Conner's claim regarding the imposition of disciplinary segregation for misconduct with one affecting the duration of confinement).

inmates a protected liberty interest in retaining their GCA Class Level. That is, while the *nature* of the alleged interest is within the meaning of liberty as conceived by the Constitution, it must also be determined whether the state has actually *created* the interest. Under Fourth Circuit precedent, state laws create a liberty interest only when statutory or regulatory language "plac[es] substantive limitations on official discretion" with respect to the interest. *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994). In this respect, state law creates a "legitimate claim of entitlement" to a status or right where: (1) the law contains specific, mandatory procedures for setting or changing that status; (2) the decisionmaker must base its decision on defined "substantive predicates" or "objective criteria"; and (3) mandatory "substantive *results*" follow once "prescribed procedures have revealed that substantive predicates have been established." *Id.* at 594 (emphasis in original). The Fourth Circuit has further explained this inquiry as follows:

> What this all comes to is that constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates: "If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable security or custody classification than you presently have," or, "Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have."

*Id.* at 595. Thus "no constitutionally protected liberty interest is thereby created under the regime [if] either the primary decisionmaker or any reviewing authority is authorized to override, as a matter of discretion, any classification suggested by application of the prescribed substantive criteria." *Id.*

These principles, applied here, compel the conclusion that Virginia statutes do not create a liberty interest in an inmate's GCA earning level. Virginia Code § 53.1-199 simply states that inmates "*may* be entitled to good conduct allowance" as set forth in § 53.1-201, which in turn sets out the four GCA Class Levels and states that inmates "may be reclassified for an increase

14

or decrease" in class according to rules and regulations approved by the State Board of Corrections. Va. Code § 53.1-201 (emphasis added). Thus, the next question is whether those regulations, promulgated as VDOC Operating Procedures, create a liberty interest.

First, it must be noted that VDOC Operating Procedures do contain specific and in some respects purportedly mandatory procedures for reducing an inmate's GCA Class Level. VDOC Op. Proc. 830.1 states that "[a] formal due process hearing is *required* when an offender... faces the possibility of reduction in good time earning level outside the Annual Review Cycle." (emphasis added). Further, VDOC Op. Proc. 830.3 states that "[r]eduction of an offender's Class Level will occur only... by action of the ICA and with approval of the Facility Unit Head." *See also id.* (F)(6) ("For a change in Class Level, a classification hearing *shall* be held in accordance with Operating Procedure 830.1." (emphasis added)). Procedures for these mandatory hearings conducted either at an inmate's Annual Review or off-cycle are set out in VDOC Op. Proc. 830.1. Thus, VDOC regulations clearly establish some mandatory procedures for reductions in an inmate's GCA Class Level.

Second, it is also clear that the regulations clearly establish some objective criteria for decisionmaking. As summarized in Part II, *supra*, VDOC Op. Proc. 830.3 provides a detailed system by which GCA levels are calculated, based on the number of points an inmate receives for achieving educational, vocational, and other program goals, the number and seriousness of disciplinary convictions, and the percentage of the year that the inmate has been employed. *See* VDOC Op. Proc. 830.3(V)(C)(1)-(3). The regulations further provide that a good time award "*shall*" be based on this performance assessment.

Finally, and most importantly, although VDOC regulations provide "substantive predicates" for awarding inmates a certain GCA Class Level, the regulations do not *require*

15

particular "substantive results" once those predicates have been established. This is so because the ICA may reject an inmate's point score and attendant GCA Class Level on the basis of one of seven overrides, which include a discretionary assessment that a point score in one area of evaluation is inordinately high or low or that a "significant recent decrease in an areas of evaluation warrants a lower Class Level." VDOC Op. Proc. 830.3 (V)(F)(10). The authorization of these subjective assessments to override an inmate's point score effectively "grant[s] absolute discretion to override GCA determinations based on total point scores," permitting the ICA or the warden "to decide the GCA class level to which an individual inmate may be assigned." *James v. Robinson*, 863 F. Supp. 275, 278 (E.D. Va. 1994). Furthermore, the "Facility Unit Head" must approve the ICA action—that is, the eventual recommendation taking into account the point score and any overrides—before a change in GCA Class Level takes effect. *See* VDOC Op. Proc. 830.3(V)(F)(12). In sum, the VDOC regulations fail to place "substantive limitations on official discretion" that would give rise to a "legitimate claim[] of entitlement" in retaining one's GCA Class Level. Given this, maintaining a particular GCA earning level is not a protected liberty interest in Virginia and plaintiff cannot state a claim for denial of procedural due process under the Fourteenth Amendment.

This conclusion is in accord with prior decisions within this district and the Western District of Virginia.[9] Furthermore, although the Fourth Circuit has not specifically addressed in a published opinion whether inmates in Virginia have a liberty interest in their GCA earning level, the Court has twice in unpublished decisions affirmed district courts that have found no

---

[9] *See, e.g. DeBlasio v. Johnson*, 128 F. Supp. 2d 315; *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997); *Holmes v. Cooper*, 872 F. Supp. 298, 300 (W.D. Va. 1995); *James v. Robinson*, 863 F. Supp. 275 (E.D. Va. 1994), *aff'd*, 45 F.2d 426 (4th Cir. 1994); *Ewell v. Murray*, 813 F. Supp. 1180, 1182 (W.D. Va. 1993).

liberty interest. *See West v. Angelone*, 165 F.3d 22 (4th Cir. 1998) (unpublished) ("Inmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level...."); *James v. Robinson*, 45 F.3d 426 (4th Cir. 1994) (unpublished).

Furthermore, the result reached here is consistent with the holdings of other circuits. The Fifth Circuit has held, for example, that the Texas good conduct time system does not create a liberty interest in good-time credit earning status because "[a]ssignment to a particular time-earning status depends on a wide variety of factors, including how long an inmate has been in the Texas prison system, his disciplinary record, [and] his participation in education and work activities." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000). Similarly, the Tenth Circuit has held that Colorado law does not create a liberty interest in good time credit earning because the credits are "discretionarily awarded." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (analyzing Colo. Rev. Stat. § 17-22.5-302(1), which states that earned good credit time is only applied against a prisoner's sentence if "he has made substantial and consistent progress in [a number of categories]"). The Texas and Colorado systems are essentially similar to Virginia's, in that an inmate's good time credit earning rate depends on a holistic assessment of his experience and conduct while incarcerated. In contrast, in the Indiana good time credit earning class system, which the Seventh Circuit has held creates a liberty interest, an inmate may only be reassigned to a lower earning level if he violates a specified list of prison. *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir. 2001) (analyzing Ind. Code § 35-50-6-4(a)). Indiana's approach—"an entitlement subject to defeasance for misconduct that must be specified by rule"—stands in stark contrast to Virginia's mix of objective criteria and discretion. *Id.*

In sum, the Virginia system does not create a liberty interest in an inmate's GCA Class Level. Accordingly, plaintiff fails to state a claim under the Fourteenth Amendment and his suit,

construed as a § 2254 petition for a writ of habeas corpus, fails. Accordingly, defendants' Renewed Motion for Summary Judgment must be granted and judgment entered in their favor pursuant to Fed. R. Civ. P. 58. An appropriate judgment and Order shall issue.

Alexandria, Virginia
March 24, 2015

/s/
T. S. Ellis, III
United States District Judge